NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

WILLIAM MIRAGLIA,  :

        Petitioner,  :

                            :            Civil Action No. 08-5181 (JAG)

        v.  :

                            :                 **OPINION**

UNITED STATES of AMERICA,  :

        Respondent.  :

_____:

**GREENAWAY, JR., U.S.C.J.**[*]

      This matter comes before this Court on the motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(6), filed by respondent, United States of America ("Respondent"), in response to petitioner William Miraglia's ("Petitioner") motion seeking to vacate, set aside or correct the sentence imposed on him, pursuant to 28 U.S.C. § 2255.

      Petitioner asserts three grounds in his petition: (1) this Court failed to take mitigating circumstances into account when imposing a sentence at the maximum end of the guideline range; (2) during sentencing, the prosecutor improperly cited relocation expenses as an example of Petitioner's embezzlement; and (3) similar cases to that of Petitioner did not result in a sentence at the maximum end of the guideline range.

      Respondent asserts that all of Petitioner's claims are without merit and should be

_____

[*] Sitting by designation on the District Court.

dismissed by this Court, without an evidentiary hearing.  Respondent also asserts that Petitioner's

sentence does not violate his constitutional rights; Petitioner's claims are procedurally barred

since he failed to appeal his sentence; this Court did consider mitigating circumstances; there was

no improper prosecutorial argument; and Petitioner's sentence does not constitute cruel and

unusual punishment.[1]  For the reasons set forth below, this motion to dismiss shall be granted.

## I.  FACTS

On April 4, 2007, Petitioner pled guilty to one count of mail fraud, in violation of 18

U.S.C. § 1341 ("Count One") and one count of filing false tax returns for tax year 2005 ("Count

Four").[2]  Both counts were in furtherance of Petitioner's scheme to defraud Photonic Products

Group, Inc. ("PPGI"), where Petitioner served as Chief Financial Officer ("CFO").  (Information,

United States v. Miraglia, Criminal No. 07-772, ¶¶ 1-7, 1-2.)  As a condition of Petitioner's plea

agreement, Petitioner stipulated to the following facts: (1) devising the mail fraud scheme caused

PPGI to "lose more than $400,000 but less than $1,000,000;" (2) "[Petitioner's] position as

PPGI's [CFO] significantly facilitated his successful execution and concealment of the mail

fraud scheme;" and (3) "[Petitioner's] filing of false tax returns regarding years 2003-2005

resulted in a tax loss to the United States Government of more than $80,000, but less than

$200,000.  These false tax returns failed to report the income [Petitioner] earned from 2003-2005

as a result of his mail fraud scheme." (Schedule A of Plea Agreement, United States v. Miraglia,

---

[1]  Respondent did not address in its argument Petitioner's conditional waiver, in the plea agreement, of his right to appeal his sentence under 28 U.S.C. § 2255.

[2]  Pursuant to the plea agreement, Counts 2 and 3 of the Information were dismissed. (Pet'r's Plea Agreement, United States v. Miraglia, Criminal No. 07-772, [hereinafter Plea Agreement"] 1.)

Criminal No. 07-772.)  Petitioner also agreed to "waive certain rights to file an appeal, collateral

attack, writ or motion after sentencing, including but not limited to an appeal under 18 U.S.C. §

3742 or a motion under 28 U.S.C. § 2255."  (Id. at 4.)

On March 25, 2008, Petitioner was sentenced to 46 months on Count One and 36 months

on Count Four, to be served concurrently.  (J. Criminal Case, United States v. Miraglia, Criminal

No. 07-772, 1-2.)

On September 3, 2008, while confined by the Bureau of Prisons, Petitioner filed this 28

U.S.C. § 2255 motion alleging three grounds to vacate, set aside or correct his sentence, which

are: mitigating circumstances, improper prosecutorial argument, and unusual punishment.[3]

(Pet'r's 28 U.S.C. § 2255 Mot. [hereinafter "Pet'r's Mot."] 4.)  Regarding mitigating

circumstances, Petitioner alleges "no mitigating circumstances were taken into account when

sentence was imposed at the maximum of the guidelines."  (Id.)  Second, Petitioner alleges

improper prosecutorial argument, stating that "the prosecutor cited my relocation expenses as an

example of my misuse of company funds.  I was offered relocation assistance several times by

the company CEO."  (Id.)  Third, regarding unusual punishment, Petitioner states that "several

similar cases did not result in the maximum sentence under the guidelines being handed down to

the defendant."  (Id. at 5.)  Petitioner also noted that none of the three grounds were previously

presented.  (Id.)

---

[3]  In explaining his claim of "unusual punishment," Petitioner states that "several similar
cases did not result in the maximum sentence under the Guidelines being handed down to the
defendant." (Pet'r's Mot. 5.)  This explanation does not appear to fall with the parameters of a
Constitutional violation as per the proscription against cruel and unusual punishment in the
Eighth Amendment of the Constitution of the United States.

## II. WAIVER OF MOTION IN PLEA AGREEMENT

### A.  STANDARD OF REVIEW

While defendants have a right to appeal, that right, as well as other rights and privileges afforded to criminal defendants, can be waived. United States v. Khattak, 273 F.3d 557, 561 (3d Cir. 2001) (citing United States v. Mezzanatto, 513 U.S. 196, 201 (1995)); see also Peretz v. United States, 501 U.S. 923, 936 (1991) ("The most basic rights of criminal defendants are . . . subject to waiver."). "It is well settled that plea bargaining does not violate the Constitution even though a guilty plea waives important constitutional rights." Newton v. Rumery, 480 U.S. 386, 393 (1987).

Joining the courts of appeals from ten other circuits, the Third Circuit has stated that "we will not exercise [our] jurisdiction to review the merits of [a defendant's] appeal if we conclude that she knowingly and voluntarily waived her right to appeal unless the result would work a miscarriage of justice." United States v. Shedrick, 493 F.3d 292, 297 (3d Cir. 2007). "In short, we have jurisdiction over this case, but will generally not exercise it absent compelling reasons." Id.  Similarly, if the waiver is valid and enforceable, a court cannot grant habeas relief "without making a mockery of the waiver [Defendant] signed." United States v. Robinson, 244 F. App'x 501, 503 (3d Cir. 2007).

"In order to support a 'miscarriage of justice' exception the petitioner is required to show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Schlup v. Delo, 513 U.S. 298, 327 (1995).  The Court further explained that "the actual innocence exception also applies to procedurally defaulted claims." Sawyer v. Whitley, 505 U.S. 333, 339 (1992).  The Supreme Court summarized the "miscarriage of justice" or

"actual innocence" standard in <u>Sawyer</u>, 505 U.S. at 339, as it was defined in three 1986

decisions.  In <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 448 (1986), the Court explained that "the

[miscarriage of justice] exception developed from the language of the federal habeas statute,

which, prior to 1966, allowed successive claims to be denied without a hearing if the judge was

'satisfied that the ends of justice will not be served by such inquiry.'"  The Court further held that

"despite the removal of this statutory language from 28 U.S.C. § 2244(b) in 1966, the

miscarriage of justice exception would allow successive claims to be heard if the petitioner

'establishes that under the probative evidence he has a colorable claim of factual innocence.'"

<u>Id.</u> at 454.

Third Circuit precedent further elucidates the miscarriage of justice exception.  Even if a

petitioner does not allege any miscarriage of justice that would result from enforcing the waiver,

the district court has "an affirmative duty both to examine the knowing and voluntary nature of

the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the

record evidence before it."  <u>United States v. Mabry</u>, 536 F.3d 231, 237-38 (3d Cir. 2008) (citing

<u>Khattak</u>, 273 F.3d at 563).  While the Third Circuit has "declined to identify a list of specific

circumstances which would give rise to, or constitute, a miscarriage of justice," it has considered

the factors as set out in <u>Khattak</u>.  <u>Id.</u> at 243.  <u>Khattak</u> followed the First Circuit's methodology in

determining a miscarriage of justice which considered:

> the clarity of the error, its gravity, its character (e.g., whether it concerns a fact
> issue, a sentencing guideline, or a statutory maximum), the impact of the error on
> the defendant, the impact of correcting the error on the government, and the extent
> to which the defendant acquiesced in the result.

<u>Id.</u> at 242-43 (quoting <u>United States v. Teeter</u>, 257 F.3d 14, 26 (1st Cir. 2001)).

**B.**     **ANALYSIS**

Petitioner signed a plea agreement in which he waived his right to file a motion under 28

U.S.C. § 2255; "[Petitioner] waive[s] certain rights to file an appeal, collateral attack, writ or

motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a

motion under 28 U.S.C. § 2255." (Plea Agreement 4.)  Petitioner also signed a statement to the

following effect: "I have read [the plea agreement], and I understand it fully.  I hereby accept the

terms and conditions set forth in this letter and acknowledge that it constitutes the plea agreement

between the parties." (Id. at 6.)  Petitioner does not challenge the validity of the waiver clause

and the statement he signed.[4]  Therefore, any right to challenge Petitioner's sentence was

effectively waived when Petitioner entered into the plea agreement.

The second prong of the waiver analysis requires the court to consider whether enforcing

the plea agreement would lead to a miscarriage of justice.  Here, Petitioner's grounds for review

are all covered by the waiver.  Petitioner contends that this Court did not consider mitigating

circumstances, although on the record, this Court acknowledged counsel's arguments in support

---

[4]  There is nothing in the record to suggest this waiver was not agreed to knowingly and
voluntarily.  See Mabry, 536 F.3d at 233, 238-39 (finding waiver in plea agreement and in court
colloquy valid where the waiver was explained by both the court and defendant's attorney where
the plea agreement stated that defendant waived his right to challenge his sentence under 28
U.S.C. § 2255, and defendant signed an acknowledgment that he read, carefully reviewed, fully
understood and voluntarily agreed to the statement.)  Furthermore, the Court of Appeals in
Mabry noted that both the district court plea colloquy, and the statements agreed to by the
defendant in the plea agreement, counseled against an involuntary or unknowing waiver.  Id. at
238.  In this case, Petitioner's signed plea agreement acknowledging that he read and fully
understood the agreement counsels against an unknowing waiver.  Although the transcript of the
plea colloquy is not available, this Court's colloquy includes specific questions pertaining to
Petitioner's knowing waiver of the right to appeal.  Petitioner makes no argument that the waiver
was signed unknowingly or involuntarily.  This Court finds that Petitioner's waiver was both
knowing and voluntary.

of mitigation, as well as the mitigating letters submitted on Petitioner's behalf.  (Sentencing

Transcript [hereinafter "Tr."]  26:19-23.)  Petitioner also contends that the prosecutor made an

improper argument.  There is no evidence in the record that the statement by the prosecutor was

given any weight independent of the other embezzlement activities Petitioner perpetrated on

PPGI.

       Finally, Petitioner argues that his sentence is unusual punishment since he was sentenced

at the maximum guidelines range.  Considering all of Petitioner's arguments, enforcing the

waiver will not work a miscarriage of justice since all of Petitioner's claims are without merit.

This Court deems the waiver valid and shall enforce the waiver.  The Petition is dismissed.

       Petitioner's claim that "no mitigating circumstances were taken into account when

sentence was imposed at the maximum of the guidelines" is without merit and enforcing the

waiver in the face of this claim would not work a miscarriage of justice.  Petitioner claims that

this Court did not consider any mitigating circumstances when it imposed a sentence of 46

months at the maximum guideline range.  During Petitioner's sentencing, this Court calculated

the guideline range as 37 to 46 months.  (Id. at 5:11.)  This Court then heard from Petitioner's

counsel regarding mitigation and downward departure.  (Id. at 5:25, 6:17-19.)  These arguments

attempted to shed some light on why Petitioner engaged in this fraud against PPGI.  Counsel

urged this Court to consider the following in mitigation: payment for nursing care for Petitioner's

mother (id. at 9:19-25, 10:17-19); payment to the Internal Revenue Service for "tax problems"

that Petitioner had (id. at 10:25, 11:1-2); Petitioner's "history and characteristics," namely that

Petitioner never had any problems with the law; Petitioner had served in the Marines; Petitioner

is the proud father of two children, who are a teacher and FBI agent; Petitioner has a disabled and

dependent wife; Petitioner has a problem with alcohol; and several of Petitioner's family members and friends wrote letters on Petitioner's behalf regarding his upstanding character (id. at 11-14).  Petitioner's counsel also expressed to this Court that Petitioner was gainfully employed, at the time of sentencing, making $140,000 per year and could pay restitution back sooner if he were able to work, as opposed to being incarcerated.  (Id. at 14:17-21.)

After these statements regarding mitigation and downward departure, this Court noted that Petitioner's counsel "spoke[] . . . eloquently on behalf of Mr. Miraglia, and has asked that the Court exercise its discretion to depart downwardly from the assigned guidelines range." (Id. at 26:3-6.)  This Court then explicitly mentioned that "[several] letters were well written and spoke eloquently on behalf of Mr. Miraglia about his personality, the kind of person he is, they spoke to that fact that he's a good family man." (Id. at 26:19-23.)

While this Court made note of the mitigating arguments made by counsel and the letters submitted on Petitioner's behalf, it determined that the "principal concern [was with] the actions of Mr. Miraglia." (Id. at 26: 24-25.)  This Court was concerned with the fact that the fraud was perpetrated over a long period of time and affected the livelihoods of many.  (Id. at 28:23-25.) This Court concluded that a sentence at the high end of the guidelines range was appropriate considering "the amount of embezzlement, the persons and entities affected, and the deterrence the Court must seek as one of the factors to take into account." (Id. at 29:1)

This Court exercised its discretion in giving this sentence and gave reasons for imposing this sentence, noting that "there must be some reckoning, there must be some statement by society with regard to what should occur when someone engages in an embezzlement of this type, of this nature and of this amount. . . . [a] sentence at the high end of the range is

8

appropriate." (Id. at 28:8-10, 23-24.)  Thus, this Court did consider mitigating circumstances as

presented by Petitioner's counsel and letters submitted on Petitioner's behalf but concluded that

other factors outweighed these arguments.  Therefore, Petitioner's claim that this Court did not

consider mitigating circumstances is without merit.  The waiver should be enforced.  There is no

miscarriage of justice here.

    Petitioner claims the prosecutor engaged in improper argument when "[t]he prosecutor

cited my relocation expenses as an example of my misuse of company funds.  I was offered

relocation assistance several times by the company CEO."  This claim is without merit and

enforcing the waiver in the face of this claim would not constitute a miscarriage of justice.

    The Supreme Court has ruled that prosecutorial arguments viewed in a vacuum are

generally not enough to overturn a conviction.  United States v. Young, 470 U.S. 1, 11-12

(1985).  Instead, "remarks must be examined within the context of the trial to determine whether

the prosecutor's behavior amounted to prejudicial error."  Id.; Cf. In re Japanese Electronic

Products Antitrust Litigation, 631 F.2d 1096, 1087 (3d Cir. 1980) (judges, in comparison to

jurors, are familiar with the litigation process due to experience on the bench or in practice and

are thus better able to digest legal arguments).[5]

    Here, viewing the sentencing proceeding as a whole, there is no indication that this Court

weighed this single example of embezzlement more heavily than any of Petitioner's other

embezzlements.  In fact, there is no indication in the record that this Court considered this

---

    [5] Most cases in this area address improper arguments made to the jury, not arguments
made to judges.

example at all.  Instead, this Court viewed the example of embezzlement as cumulative, noting

that:

> [w]hen one engages in those types of activities on occasion for a short period of
> time, one can possibly logically attribute that to a dalliance, to a breakdown in
> one's moral code for some short period of time attributed to some trauma that may
> be occurring or some weakness that has to be indulged, but this type of behavior
> over the sustained period of time that is evident here cannot be explained away,
> cannot be excused, and cannot be condoned. . . . [w]e are talking about persistent,
> consistent behavior requiring some planning and indulging into one's fantasy life**.**

(Id. at 27: 3-10; 28:15-17.)  This Court's concern was with the frequency and amount of

embezzled funds, not any single incident taken in isolation.  The prosecutor offered this

statement as an additional example of embezzlement, not as an argument in support of upward

departure.  Viewed in the context of Petitioner's conduct as a whole, the Prosecutor's reference

to this incident, even if incorrect, was not improper since it did not influence this Court's

decision.  Petitioner's ground for improper prosecutorial argument is without merit.

Petitioner claims that "several similar cases did not result in the maximum sentence under

the guidelines being handed down to the defendant."  This claim is without merit and enforcing

the waiver in the face of this claim would not lead to a miscarriage of justice.  Petitioner's

sentence is indeed reasonable and as such does not result in unusual punishment.

This Court determined that in the instant case Petitioner's crimes were sufficiently

egregious to warrant a sentence at the high end of the guideline range.  This sentence, within the

guidelines, is presumed reasonable under Supreme Court precedent.  A district court's sentence

rendered within the guidelines is presumed reasonable since it includes a double determination,

by both the sentencing judge and the Sentencing Commission that the sentence is proper in a

particular case.   Rita v. United States, 551 U.S. 338, 347 (2007).  This double determination

"increases the likelihood that the sentence is a reasonable one." Id.  Since Petitioner's sentence

is presumptively reasonable, it cannot result in "unusual" punishment.  Therefore, Petitioner's

claim is without merit and enforcing Petitioner's waiver in the face of this claim would not work

a miscarriage of justice.

 After reviewing all three grounds Petitioner asserts in support of his 28 U.S.C. § 2255

petition, enforcing the waiver in the plea agreement would not work a miscarriage of justice.  The

alleged errors are without merit.

### III. CONCLUSION

 For the reasons set forth above, this Court finds that Petitioner waived his right to

challenge his sentence under 28 U.S.C. § 2255.  Further, Petitioner's substantive claims are

without merit.  Respondent's motion to dismiss is granted.


Date: March 15, 2010



 S/Joseph A. Greenaway, Jr.
 JOSEPH A. GREENAWAY, JR., U.S.C.J.
 (Sitting by designation on the District Court)